IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

RONALD STOCKTON,

      Plaintiff

    v.

JOHN WETZEL, ET AL.,

      Defendants

: CIVIL NO. 1:CV-16-0613
:
: (Judge Conaboy)

FILED
SCRANTON
MAY 0 4 2018
Per: 
DEPUTY CLERK

**MEMORANDUM**

## I. Introduction

This matter comes before the Court on the pro se Plaintiff's Motion to Compel. (Doc. 54). The motion is fully briefed and now ripe for disposition.

For the reasons stated below, Plaintiff's motion will be denied.

## II. Relevant Legal Standards

A party who has received evasive or incomplete discovery responses may seek a court order compelling

disclosures or discovery of the materials sought.  Fed. R. Civ. P. 37(a)(4).

Issues relating to the scope of discovery permitted under the Federal Rules rest in the sound discretion of the Court.  <u>Wisniewski v. Johns-Manville Corp.</u>, 812 F.2d 81, 90 (3d Cir. 1987).  A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of an abuse of discretion.  <u>Marroquin-Manriquez v. I.N.S.</u>, 699 F.2d 129, 134 (3d Cir. 1983).

Although the scope of discovery is to be interpreted broadly, it "is not without limits." <u>Fassett v. Sears Holdings Corp.</u>, 319 F.R.D. 143, 149 (M.D. Pa. 2017) (quoting <u>Kresefky v. Panasonic Commc'ns & Sys. Co.</u>, 169 F.R.D. 54, 64 (D.N.J. 1996)).  It is well settled that Fed. R. Civ. P. 26 establishes a liberal discovery policy.  The Federal Rules of Civil Procedure allow discovery

> regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties'

> relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). In determining "the scope of discoverable information under Rule 26(b)(1), the Court looks initially to the pleadings." Trask v. Olin Corp., 298 F.R.D. 244, 263 (W.D. Pa. 2014). Courts interpret relevancy "broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 350-51, 98 S.Ct. 2380, 2398, 57 L.Ed. 253, (1978). Thus, "all relevant material is discoverable unless an applicable evidentiary privilege is asserted. The presumption that such matter is discoverable, however, is defeasible." Pearson v. Miller, 211 F.3d 57, 65 (3d Cir. 2000).

Fed. R. Civ. P. 34 requires that a party served with a document request produce either the requested documents or "state with specificity" the grounds for objecting.

Fed. R. Civ. P. 34(b)(4); Momah v. Albert Einstein Medical Center, 164 F.R.D. 412, 417 (E.D. Pa.1996). "Mere recitation of the familiar litany that an interrogatory or a document production request is 'overly broad, burdensome, oppressive and irrelevant' will not suffice." Id. (quoting Josephs v. Harris Corp., 677 F.2d 985, 992 (3d Cir.1982)). The objecting party must demonstrate in specific terms why a particular discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper. Goodman v. Wagner, 553 F. Supp. 255, 258 (E.D. Pa. 1982). The party attempting to withhold the release of relevant material on the grounds of privilege must also "describe the nature of the documents, communications, or other tangible things not produced or disclosed . . . in a manner that . . . will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). Once an objection is properly articulated, the burden rests with the party seeking discovery to show that a discovery

request lies within the bounds of Rule 26. Momah, 164 F.R.D. at 417.

III. **Relevant Background and Procedural History**

On July 18, 2017, the Court granted in part and denied in part the Pennsylvania Department of Corrections (DOC) motion to dismiss Stockton's Amended Complaint. (Doc. 48). The surviving claims relate to events that transpired at the State Correctional Institution at Smithfield (SCI-Smithfield) Restricted Housing Unit (RHU) on December 20, 2013. (Id.)

Stockton alleges the Defendants (Lt. Bard, Sgt. Miller, CO Willinksy, CO Harpster, CO Wilson, CO Barndt and CO Parks) improperly opened his RHU cell door for the explicit purpose of assaulting him.[1] Defendants claim Stockton's cell door was accidently opened by CO Parks and that Stockton exited his cell voluntarily, refused repeated direct orders to return to his cell, and then

---

[1] On March 28, 2018, the Court approved the parties Joint Stipulation for the dismissal of all claims against Sergeant Timothy Miller filed pursuant to Fed. R. Civ. P. 41(a)(1)(ii). See Doc. 66.

- 5 -

was physically restrained and placed in his cell by staff. Stockton claims that, following the encounter with correctional staff, Nurse Houck failed to provide him with any medical care for injuries.

On September 16, 2014, Stockton was found guilty of one count of aggravated assault stemming from the December 20, 2013 incident. See Commonwealth v. Stockton, CP-31-CR-0000254-2014 (Ct. Com. Pl. Huntington Cnty.). On November 13, 2014, Stockton received a sentence of twenty-seven to one hundred months' imprisonment to run consecutively to any sentence he is presently serving.

Presently before the Court is Stockton's motion to compel the production of numerous documents concerning the internal operations of Level Five housing units, such as SCI-Smithfield's RHU, as well as original copies of investigative reports relating to the December 20, 2013 event. Specifically, Stockton seeks the release of the DOC's 6.5.1 Policy, which addresses the Administration of Security Level 5 Housing Units, such as SCI-Smithfield's

RHU. Stockton also requests the release of Policy 6.7.1 which relates to "Special Response Teams". Finally, Stockton seeks to compel the release of Investigator G. Allison's personal memorandums, which include his candid observations and recommendations gathered through various investigatory techniques from the prison staff and inmate witnesses interviewed during his investigation of Stockton's claims of assault. Defendants object to the release of Investigator Allison's memorandums based on privilege relating to maintaining security within the prison and their assertion that the memorandums are unnecessary to prove Stockton's claims. (Doc. 58). Defendants submit the Declaration of Secretary John E. Wetzel in support of their objections to the release of the requested documents as well as a copy of the redacted discovery product furnished to Plaintiff. <u>See</u> Doc. 58-1.

## IV. Discussion

### A. Section 6 Policies

Defendants argue that Section 6 policies are not available to the public or inmates for security reasons as they relate to the management of the most secure portion of most prisons, the RHU. Section 6.5.1 governs the "Administration of Security in Level 5 Housing Units," and Section 6.7.1 relates to "Special Response Teams." (Doc. 58). Stockton concurs that pro se inmates do not have access to these documents. (Doc. 54). However, he attaches portions of an outdated portion of the 6.5.1 policy to his Amended Complaint. (Doc. 33-1). He reports receiving the entire forty-eight page copy of the policy from his criminal attorney. See Doc. 64.[2]

With this background in mind, and portions of the policy before the Court (courtesy of Stockton), it is clear that Plaintiff is aware of the contents of the version of Section 6.5.1 in effect at the time of the event because it was used in his criminal trial.

---

[2] He adds that prison officials at his present facility, SCI-Houtzdale, have now confiscated his copy of the policy. (Doc. 64).

Stockton does not address why an updated version of this policy is needed to proceed in this action which occurred in 2013. Moreover, Stockton does not address Defendants' argument that the release of this policy to pro se inmates, which could allow its dissemination throughout the prison system, would jeopardize the safety and security of the institution. Stockton readily admits the policy is not available to inmates or the public. Finally, Stockton, does not address how the implementation of a policy or procedure would prevent the RHU doors from being opened "accidentally", the asserted reason for which he needs the policy.[3]

The United States Supreme Court has recognized a qualified government document privilege. Kerr v. United States Dist. Court for the No. Dist. Of Cal., 426 U.S. 394, 405, 96 S.Ct. 2119, 2125, 48 L.Ed.2d 725 (1976). The Court agrees that Defendants' concerns are valid, and that the safety and security concerns of the Defendants outweigh any evidentiary benefit Stockton may receive in

---

[3] The Incident reports Stockton attached to his Amended Complaint recount how CO Park opened the wrong door in the unit. (Doc. 33-1).

obtaining an updated copy of this policy or the return of the policy previously in his possession. As such, the motion to compel the disclosure of Policy 6.5.1 will be denied.

Concerning Section 6.7.1, Defendants have identified it as relating to "Special Response Teams". (Doc. 58). Although the Court requested Stockton to file a brief in support of his motion to compel specifically identifying his basis for compelling Defendants' further response to a specifically disputed request (Doc. 55), Plaintiff failed to do so. Stockton's declaration in support of his motion to compel (Doc. 59) also fails to address his specific reason for requesting Section 6.7.1 that relates to the remaining claims in his case. To the extent he asserts that the "response" policy is needed to demonstrate that the officers improperly used "excessive" force rather than "minimal" force when attempting to return him to his cell, Stockton has not adequately demonstrated his need for this confidential policy. This finding is underscored by the agreement of both parties

that there is video footage of the incident. Thus, Stockton's motion to compel the production of Section 6.7.1 will be denied.

## B. Redacted Investigative Reports

Plaintiff requests an original copy of the investigative report completed in response to the December 20, 2013 incident. (Doc. 54). Specifically, Stockton seeks the disclosure of the investigator's notes concerning his interviews of witness (staff and inmate) made during the investigative process. (Id.) Defendants have supplied the Court with a copy of the redacted investigative report provided to Stockton in discovery. (Doc. 58-1). Defendants redacted the investigator's memorandum of his interview with inmate and staff witnesses. However, the investigator identified each staff member and inmate interviewed in connection with the investigation. (Id.) Where inmates provided a written statement, Stockton received copies of the statement. Likewise, Stockton received staff written

statements provided to the investigator. Additionally, Defendants provided the individual Use of Force Occurrence reports, completed by each staff member involved in the incident, via discovery even though Plaintiff attached them to his Amended Complaint. Thus, the only dispute here is whether Stockton should receive the investigator's own candid observations and assessment of each witness rather than just the raw data used to formulate the report. The Court has reviewed the redacted investigative report, the Declaration of Secretary Wetzel, and Stockton's motion to compel and supporting declaration as to his need for the investigative report.

Given the wealth of raw interview material provided to Stockton, including all inmate and staff witness statements, the Court cannot find that Stockton's arguments to compel the investigator's personal impressions of his encounter with the witnesses trumps Secretary Wetzel's concerns as to the chilling effect the disclosure of the investigator's methods may have on

future investigations and the possible safety and security concerns for those working and living within the correctional setting. Thus, the Court will deny Stockton's request to compel the production of the original copy of the investigative report concerning the December 20, 2013 incident.

An appropriate Order will enter.

DATED: MAY 4th, 2018

/s/ Richard P. Conaboy
RICHARD P. CONABOY
**United States District Judge**